M. G. LOVE, Appellant, v. F. H. SCOTT, Respondent.

Kansas City Court of Appeals, May 4, 1914.

REPLEVIN: Sales. The owner of notes secured by liens on personal property agreed with the mortgagor to release the liens, if the latter would sell the property at public auction and pay the notes out of the proceeds of such sale. The property was accordingly sold for more than the amount due on the notes and a part of the proceeds was paid by the clerk of the sale to the owner of the notes, who applied a portion of said amount to the payment of an unsecured open account, which he had against the mortgagor. The latter asserted that the proceeds of the sale in excess of the amount due on the notes belonged to and should be paid to him. This action followed. *Held,* that the special interest of the owner of notes in the property securing the notes was satisfied by the sale and he must look to the trustee for the fund he elected to accept as security in lieu of his liens.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

*John D. Taylor* for appellant.

*J. A. Collet* for respondent.

JOHNSON, J.—This suit was begun in the circuit court of Chariton county, November 27, 1912, to replevin two horses, one mare, one farm wagon, one disc harrow, one corn planter and two sets of harness, of the total value of $500. Verdict and judgment were for defendant and plaintiff appealed.

Plaintiff, who lived in Illinois, owned a farm of 160 acres in Chariton county, Missouri, near Mendon and early in the year 1912, entered into an agreement with defendant who also lived in Illinois, to remove to the farm and occupy it during the ensuing crop year as his tenant. A written lease was entered into which fixed the rental for the year at $864, and defendant executed and delivered to plaintiff his promissory note for that sum to become due and payable without interest on February 20, 1913. Defendant owned some live stock and farm implements but had no money and plaintiff advanced him money for removal expenses, to purchase needed implements and tools and to live on until harvest. The sum of all such advances was about $1900, and plaintiff received a promissory note from defendant for a portion thereof, amounting to $1025. This note was dated April 4, 1912, and matured February 20, 1913. It bore interest from date and was secured by a chattel mortgage on all of defendant's personal property. The remainder of the advances was left in the form of an open account.

About October 1, 1912, and before the maturity of either of the described notes defendant became dis-

satisfied and resolved to give up the farm and return to Illinois. His total indebtedness to plaintiff was $2740.22, consisting of the rent note of $864, which was secured by a landlord's lien on the crops, the note of $1025 secured by the chattel mortgage covering all of defendant's personal property on the farm, and the unsecured open account for the remainder. Also he owed a debt of $329.35 to a Mr. Stewart for some property he purchased for use on the farm and some other small debts to merchants. In furtherance of his purpose to terminate the tenancy defendant entered into negotiations with plaintiff which culminated in an agreement to sell at public sale all the property covered by the landlord and chattel mortgage liens. Both notes were to be treated as due for the purposes of the sale and the distribution of the proceeds and plaintiff agreed to release all the property from his liens which were to attach to the proceeds of the sale. The property bought of Stewart was to be sold at the same time and its proceeds applied, first, to the payment of his claim. A clerk of the sale was agreed upon and invested with the duty of receiving the proceeds and distributing them in accordance with the agreement of the parties. There is no dispute in the evidence over any of these facts but there is a sharp and vital controversy over the terms of the agreement relating to the share of the proceeds plaintiff was to receive. He contends that first they were to be applied to the payment of his entire demand, including the open account and that defendant was to have the remainder. On the other hand, the evidence of defendant discloses an agreement that the proceeds were to take the place of the property and be subject only to the discharge of the liens which were merely transferred from the property to its proceeds and that the unsecured open account was to remain as it was. In other words, the clerk of the sale, who was made a trustee of the pro-

179 App. 23

ceeds·was to apply them, first, to the discharge of the liens amounting to about $1900, and then pay the remainder to defendant.

The evidence of defendant on that issue is substantial—indeed, is so strong that if we were sitting as triers of fact we would say, as did the jury, that he had the better of the controversy.

The sale was made and the property covered by the liens was sold under the announcement of plaintiff that he released it from his liens. Exclusive of the Stewart debt which was paid out of the proceeds of the property defendant had purchased of him, the proceeds realized from the property and paid to the clerk amounted to about $2300, a sum greater than was required to discharge both liens, but not enough to pay the open account held by plaintiff. Shortly after the sale defendant gave plaintiff a written order on the clerk for the proceeds but on reflection concluded he had acted unwisely and countermanded the order, but not until after plaintiff had obtained $1000 on it. In addition to this payment plaintiff received $444 from the sale, making a total of $1444, which if applied on the two lien notes would have reduced the amount due on them to $498.56. Instead of doing this he applied these payments, first to the discharge of the open account ·and then brought suit against the clerk of the sale to recover all of the fund remaining in his hands. Also he began the present action against defendant to recover property covered by the liens but bought at the sale by friends of defendant for defendant's benefit. Plaintiff states it was agreed before the sale that there was to be no "by-bidding" but this is denied by defendant.

While the sheriff was executing the writ of replevin there was a tempestuous meeting of the parties convoked by the attorney for defendant for the purpose of ascertaining the amount due on the lien debts in order that defendant might tender payment of such

amount and costs out of the fund in the hands of the clerk and thus end the litigation. On learning the amount defendant offered payment of it and the accrued costs out of the proceeds held by the clerk and repeated the offer in the answer he subsequently filed. There is much discussion in the briefs over the question of the sufficiency of these offers to constitute a tender within the legal meaning of that term but in the view we have of the whole case it would be fruitless to enter into that discussion and for present purposes we shall omit from consideration all of the evidence bearing on that subject.

Objection is urged by counsel for plaintiff against the admission of testimony relating to the conversation the parties had at their meeting following the bringing of this suit. The objection is based on the idea that the meeting was the result of an effort to compromise and settle the differences between the parties but as we understand the evidence, neither party was actuated by such peaceful motive. Thinking it important for defendant to make a tender of the amount of the lien notes still unpaid, his attorney called the meeting for that sole purpose and while at the interview there was much acrimonious discussion of the respective positions of the parties, there was no suggestion of an amicable adjustment of their differences. The law is very zealous in the encouragement of peaceful settlements of disputes and to that end will not allow proof of unsuccessful attempts at compromises but where, as in the present instance, the parties meet not to compromise but to give battle, the rule does not apply, for obvious reasons. Defendant thought to secure a strategical advantage by a tender of the amount due on the notes and his adversary met him with the assertion of a claim to a lien on the proceeds of the sale for the open account and to a lien on the replevined property under the chattel mortgage. In the course of the wordy contest plaintiff, so defend-

ant states, made certain admissions of evidentiary value to defendant about the agreement for the sale. The court did not err in admitting testimony of such admissions since they were not made in an effort at compromise but in the course of the controversy.

At the time of the sale the open account was not a lien on the property and neither of the notes secured by liens thereon was due. There had been no breach of the conditions of the chattel mortgage nor of the landlord's lien. Plaintiff had no right to the possession of the property until condition broken, nor could defendant have sold it unencumbered of the liens without the consent of plaintiff. Thus situated the parties agreed to an immediate sale of the property and in consideration of receiving immediate payment of debts that would not mature for four months plaintiff agreed to release the property from his liens and to look to the proceeds of the sale for his security. His interest in the property was measured by his liens and unless he procured the consent of defendant to include the open account in his right to a lien on the proceeds, we think he had no interest in or right of possession to the replevined property, since the proceeds of the sale were more than sufficient to discharge the two notes in full. If the clerk of the sale, who became trustee of the proceeds, has funds that should be applied to the payment of these notes, plaintiff has his remedy against him. When the clerk became possessed of enough funds to pay the notes in full plaintiff's interest in the remaining property ended and it is immaterial to him that defendant had that property bought in for his own benefit. After the notes were paid the remaining property was defendant's, completely subject to his *jus disponendi*. Of course he had no right to dispose of it in a way to defraud his creditors, including plaintiff who was still a creditor to the extent of his open account, but he had a right to take it free of encumbrances, unless, as we have

said, the agreement for the sale included the open account as a demand secured by a lien on the proceeds.

The only issue in the case was whether the agreement made the open account a lien demand. Plaintiff says it did, defendant that it did not. The evidence of each is substantial and since the agreement was not reduced to writing the issue became one of fact for the jury to determine. The jury, under appropriate instructions, have solved that issue in favor of defendant and with the fact established that the open account was to remain unsecured and that only existing liens were to attach to the proceeds we hold that plaintiff's special interest in the property was satisfied and that he must look to the trustee for the fund he elected to accept as security in lieu of his liens on the crops and other personal property of defendant. The agreement, as stated by defendant, did not lessen the extent of the liens. Plaintiff surrendered no part of his security and was to receive the benefit of a speedy discharge of his secured claims. He would have realized that benefit if he had refrained from his unjust attempt to force the payment of his unsecured demand in violation of his agreement.

Defendant was not required to make a tender of the amount remaining unpaid on the two notes, out of the fund in the hands of the clerk. He had no control over that fund and, despite his wishes, or anything he might do, it was the duty of the clerk, the trustee, to dispose of the fund in accordance with the trust agreement. To defeat plaintiff's claim to the property in suit it was enough for defendant to show that the mortgage lien had been shifted by agreement to the fund and that the fund was sufficient to discharge that lien.

The judgment is affirmed. All concur.